**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


BOBBY WAYNE SMITH, JR., #270490,

                   Petitioner,             Case Number: 07-15231

v.                                    HON. ANNA DIGGS TAYLOR
                                          UNITED STATES DISTRICT JUDGE

JERI-ANN SHERRY,

                   Respondent.

_____/


**OPINION AND ORDER 1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**
**2) DENYING CERTIFICATE OF APPEALABILITY; 3) DENYING LEAVE TO**
**PROCEED IN FORMA PAUPERIS ON APPEAL; 4) GRANTING MOTION TO**
**EXPAND RECORD AND 5) DENYING MOTION FOR DISCOVERY**
(This Order Resolves Docket Entries 1, 15 & 16)


       Petitioner Bobby Wayne Smith has filed a *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Chippewa

Correctional Facility in Kincheloe, Michigan, challenges his convictions for first-degree

premeditated murder, conspiracy to commit first-degree murder, and two counts of possession of

a firearm during the commission of a felony. For the reasons set forth below, the Court shall

deny the petition.

### I. Factual Background

       Petitioner was jointly tried with three co-defendants, Kevin Tyran Harris, Lamont

Bernard Heard, and Antwan Lamont Williams. The Michigan Court of Appeals set forth the

facts pertinent to Petitioner's convictions as follows:

       All the convictions stem from the shooting death of Lonnie Adams. The victim, a

resident of Ypsilanti, came to Pontiac on August 30, 1995. According to his grandmother, Adams was there to visit family. Sometime around midnight that night, several people in the neighborhood heard gunshots. Several eyewitnesses testified at trial that, after having heard the volley of gunshots, they saw four men in dark clothing standing around Adams' body. Two witnesses testified that they believed they saw shots fired at the victim as he lay on the ground. One eyewitness testified that he saw four men chasing and shooting at Adams. According to this witness, one of the four exclaimed, "You trying to rob me. I've got something for your ass."

Some of the most dramatic testimony was offered by a minor. Almost thirteen years old at the time of the shooting and seventeen years old as of trial, this witness testified that she saw Adams pounding and screaming at the door of her residence. This witness saw three men chase and shoot Adams after he left her residence. The witness identified one of the three shooters as Terry Cooley, who had died as of trial. When the witness showed reluctance in naming the other two, the trial judge cleared the courtroom of all spectators. Then, outside of the presence of the jury, the court questioned the witness about her reluctance to testify. She indicated that she was afraid to identify the other two men because she feared for her life. After the jury returned, the witness identified defendants Heard and Smith as the other two men she saw chase and shoot Adams.

Dion Coleman testified that he and the four defendants were members of a street gang known as Project Posse. Coleman testified that Adams and defendant Williams got into an argument while at a dice game on the night of the shooting. Coleman testified that after Adams left the game, the four defendants and Antoine McNeal engaged in conversation during which they discussed killing Adams. According to Coleman, he and McNeal declined to go along with the murder. McNeal also testified that while he and Coleman were present when the murder was being planned, he and Coleman backed out. Coleman further testified that he saw the four defendants later that evening dressed in black and carrying a variety of weapons. According to Coleman, the men left with Cooley, traveling in a group of three and a group of two. McNeal testified that he witnessed the five men chasing Adams, and saw sparks fly from the group as they chased the victim.

According to McNeal, Smith later told him that the four defendants and Cooley had killed Adams. Coleman testified that Smith also admitted his involvement in the murder. According to Coleman, the day after the murder, he, the four defendants, Cooley, and McNeal, met and agreed to keep quiet. Coleman indicated he at first kept the agreement, even going so far as to lie about the incident to the police and in another proceeding held in the district court. Coleman admitted on cross-examination that the police had told him that he could be charged with the murder if he continued to be uncooperative.

Sheila Scott, defendant Heard's girlfriend, testified that she was present when the four defendants, McNeal, and Cooley met up before the murder at Heard's station wagon. Heard and Harris gave her some unidentified personal items to hold, and Williams gave her a bike. The men then ran off, the hoods of their sweaters over their heads. At some later point in time, Scott witnessed the four defendants and Cooley chasing the victim. Soon thereafter, she heard the sound of gunshots. Heard then returned to his car, and the two drove to a liquor store. According to Scott, while the two were at the store, Heard stated the men had killed Adams. Later, Heard explained to Scott that Adams "was going to stick them up so they had to get him before he got them."

Joseph Morris testified that he was incarcerated with defendant Harris at some point after the Adams murder. According to Morris, while the two were in their cell, Harris confessed to being involved in the murder.

*People v. Heard, et al.*, No. 221827, 2002 WL 1424420, at *1-2 (Mich. Ct. App. Jun. 28, 2002).[1]

## II. Procedural History

Following a trial in Oakland County Circuit Court, a jury convicted Petitioner of first-degree premeditated murder, conspiracy to commit first-degree murder, and two counts of possession of a firearm during the commission of a felony. The court sentenced him to life imprisonment for the murder and conspiracy convictions, to be served consecutively to two years imprisonment for each of the felony-firearm convictions.

Petitioner appealed his convictions to the Michigan Court of Appeals, presenting the following claims:

    I.      Mr. Smith was denied his state and federal constitutional rights to a fair trial when the trial court gave improper jury instructions regarding accomplice liability and was denied the effective assistance of counsel because defense counsel failed to object to the instructions.

    II.     Mr. Smith was denied his constitutional right to a fair trial and due process of law

---

[1]The Michigan Court of Appeals consolidated the appeals of co-defendants Heard, Harris and Williams with Petitioner's.

due to prosecutorial misconduct.

The Michigan Court of Appeals affirmed Petitioner's convictions. *Heard, et al.*, No. 221827, 2002 WL 1424420 at *10. Petitioner then filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same two claims, which the court denied. *People v. Smith*, 468 Mich. 872 (2003).

Subsequently, Petitioner filed a post-conviction motion for relief from judgment pursuant to Michigan Court Rule 6.502. He argued that he was denied the effective assistance of trial counsel for 1) failure to investigate additional evidence of an alternate suspect; 2) failure to present a relevant and material alibi witness; 3) failure to challenge the trial court's jurisdiction; 4) failure to object to alleged prosecutorial misconduct; 5) failure to assert that the verdict was against the great weight of the evidence; 6) allowing inadmissible hearsay testimony into evidence; and 7) the cumulative harm of the errors that denied him a fair trial. Petitioner also argued that he was denied the effective assistance of appellate counsel for failure to raise the ineffectiveness of trial counsel on direct appeal.

The trial court rejected these claims, because it found it had jurisdiction and because Petitioner failed to show prejudice from the problems alleged in his claims, as required by Michigan Court Rule 6.508(D)(3). *People v. Smith*, No. 98-163898 (Oakland Cty. Cir. Ct. Jan. 24, 2006) (unpublished). The court found that in light of the overwhelming evidence against Petitioner, he failed to demonstrate that the alleged errors would have changed the outcome of the trial. *Id.* at 2.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims. The court denied leave to appeal for "failure to meet the

burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Smith*, No. 270486 (Mich. Ct. App. Nov. 28, 2006) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which it denied for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Smith*, 480 Mich. 854 (2007).

Petitioner now seeks the issuance of a writ of habeas corpus on the same nine grounds he raised in his previous appeals.

### III. Pending Motions

Petitioner has filed a Motion to Expand the Record and a Motion for Discovery.

Petitioner seeks permission to expand the record to include affidavits from Eric Handy, his trial counsel, Shalina Pryor, an alleged alibi witness, and a self-executed affidavit. He contends they support claims presented in his habeas corpus petition. Rule 7, Rules Governing Section 2254 Cases, allows for expansion of the record in habeas corpus proceedings as follows:

> (a) If the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition.

> (b) The expanded record may include, without limitation, letters predating the filing of the petition in the district court, documents, exhibits, . . . Affidavits may be submitted and considered as part of the record.

Rule 7, Rules Governing Section 2254 Cases.

The Court notes that the Handy and Pryor affidavits are already part of the record. It further determines that Petitioner's self-executed affidavit is relevant to the determination of the merits of the habeas corpus petition, and, therefore, shall grant the request to expand the record with it.

Petitioner has also filed a Motion for Discovery. Petitioner seeks access to grand jury

transcripts from an unrelated case in which he contends he was confused with an individual named "Poo Bah" who was the actual perpetrator in that proceeding. In the present case, he raised a mis-identification defense and argued that he had again been mistaken for "Poo Bah" when identified as a shooter.

Rule 6, Rules Governing Section 2254 Cases, provides that leave of court is required before a habeas corpus petitioner may conduct discovery. Respondent has filed portions of the state court record in accordance with Rule 5, Rules Governing Section 2254 Cases. The Court determines that the record contains adequate information about Petitioner's mis-identification defense and no further materials are necessary at this time for a fair disposition of the petition. The Court therefore denies the Motion for Discovery.

## IV. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

## V. Discussion

### A. Jury Instructions

Petitioner claims that he is entitled to federal habeas relief because the trial court gave improper instructions to the jury regarding accomplice testimony and the defense of abandonment. Petitioner argues that the trial court judge mistakenly informed the jury that abandonment was a defense to conspiracy to commit murder; therefore, leading the jury to believe that two witnesses – Antoine McNeal and Dion Coleman -- could not have been charged as accomplices if they abandoned the conspiracy.

Generally, a claim that a state trial judge gave erroneous jury instructions is not cognizable in a federal habeas action unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'" *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (*quoting Cupp,* 414 U.S. at 147).

The Michigan Court of Appeals, the last state court to issue a reasoned opinion regarding this claim, stated, in pertinent part:

> [D]efendant argues that the instructions on accomplice testimony were misleading and thus denied defendant a fair trial. The instructions regarding the testimony of McNeal and Coleman came at the conclusion of a lengthy series of instructions on evaluating witness testimony:
>
>> Before you may consider what Antoine McNeal and . . . Dion Coleman . . . [s]aid in Court, you must consider whether [they] took part in the crime the defendant is charged with committing. Antoine McNeal and Dion Coleman have not admitted taking part in the crime. But, there is evidence to lead you to think that they did. A person who knowingly and willingly helps or cooperates with someone else in committing a crime is called an accomplice. When you think about Antoine McNeal and Dion Coleman's testimony first decide if they were an accomplice. If after thinking about all the other evidence you decide that they did not take part in this crime, judge their testimony as you judge any other witness. But, if you decide that Antoine McNeal and Dion Coleman were accomplices, then you must consider their testimony in the following way. You should examine an accomplice's testimony closely and be careful about accepting it. You may think about whether the accomplice's testimony is supported by other

8

evidence. Because then it may be more [re]liable . . . . However, there is nothing wrong with the prosecutor using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt. When you decide whether you believe an accomplice, consider the following. Was the accomplice's testimony falsely slanted to make the [defendants] seem guilty because of the accomplice's own interest, bias or for some other reason. Has the accomplice been offered an award or been promised anything that might lead him to give false testimony. The witnesses have not been charged with the crimes arising out of this incident. Has the accomplice been promised that he will not be prosecuted or promised a lighter sentence or allowed to plead guilty to a less serious charge. If so, could this have influenced his testimony. Does the accomplice have a criminal record. In general, you should consider an accomplice's testimony more cautiously than . . . you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.

These instructions are accurate and complete.

The abandonment instruction was delivered at the start of the instructions on the crime charged, which immediately followed the above excerpted accomplice testimony instruction:

> In this case, the defendants are charged with committing or intentionally assisting someone in committing first degree, premeditated murder and conspiracy to commit first-degree premeditated murder or the lesser charges of second-degree murder . . . .
>
> ***
>
> Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it and can be convicted of that crime as an aider and abettor . . . .
>
> ***
>
> A person who aids and abets a crime and thereafter abandons the person, the crime may not be convicted as an aider and abettor. An abandonment occurs when a person freely and completely gives up the idea of committing the crime.

These instructions are also accurate and complete. They do not indicate that abandonment is a defense to conspiracy to commit murder. Rather, they stated that a person cannot be convicted of aiding and abetting a conspiracy to commit

murder if they withdraw from the enterprise.

*Heard, et al.,* 2002 WL 1424420 at *4-5.

While the trial court's instructions on accomplice testimony and abandonment were complete and proper under Michigan law, the prosecutor's rebuttal closing argument improperly conflated these instructions. The prosecutor stated:

> Another thing that you were told, ladies and gentlemen is that [I] . . . will suggest to you that Antoine [McNeal] can't be charged because he abandoned his crime. [I'm] . . . not suggesting anything to you. But, listen to the instructions given by Judge Howard. He will instruct you that a person who abandons a crime may not be charged with committing that crime.

Tr., Vol. 10, at p. 178.

Co-defendant Heard's counsel objected to the prosecutor's characterization of the jury instructions. The trial court sustained the objection and advised the jury, "The instruction will be as I give it to you." *Id.*

The prosecutor then made the following remark:

> I'm not reading an instruction. The judge is going to do that. However, the statements that are made by defense attorneys as well as myself are not evidence. Listen to the Judge's instructions and I believe that what the Judge is going to tell you with regard to abandonment is something very similar to what I just told you, if not on point.

*Id.*

Co-defendant Heard's defense counsel again objected to the prosecutor's statement. The trial court then gave the following cautionary instruction:

> Again, if the attorneys say something different than what I say, follow what I say when it comes to the special instruction of abandonment which I will give you which you will read. I will read it in its totality.

*Id.* at p. 179.

The Michigan Court of Appeals held that the prosecutor's misstatement of the law did not require reversal, stating, in pertinent part:

> Thus, properly framed, defendant's argument is not that the court erred in the instructions given, but that the court should have sua sponte altered its abandonment instruction after the actions of the prosecutor. While an instruction clearing up any potential ambiguity would have been desirable, we conclude that the failure to do so constitutes harmless error. The jury was still instructed that it was the court's responsibility to instruct the jury on the applicable law.
>
> * * *
>
> Given the totality of the instructions and the weight of the evidence, we do not believe that defendant has established a miscarriage of justice requiring reversal.

*Heard*, 2002 WL 1424420 at *5-6.

In conducting federal habeas review of an alleged constitutional trial error, the Court will consider the error to be harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." *O'Neal v. McAninch,* 513 U.S. 432, 436 (1995) (internal quotation omitted). In the case of allegedly inadequate jury instructions, the petitioner must demonstrate that the instructions were so infirm as to render the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72.

It is well established that, "[a] jury is presumed to follow its instructions." *Weeks v. Angelone,* 528 U.S.225, 234 (2000). In this case, the trial court properly instructed the jury regarding accomplice testimony and the defense of abandonment. Further, the trial court instructed the jury that the instructions were as he had given them, rather than as the lawyers

may have stated them.  Thus, the Court concludes that any ambiguity caused by the prosecutor's misstatements did not render Petitioner's trial fundamentally unfair.  Accordingly, the Michigan Court of Appeals' decision is not contrary to federal law and does not involved an unreasonable application of Supreme Court precedent.  Petitioner is not entitled to habeas corpus relief with respect to this claim.

### B.  Alleged Prosecutorial Misconduct

In his next claim, Petitioner argues that his right to a fair trial was violated by repeated instances of prosecutorial misconduct.  Specifically, Petitioner claims that the prosecutor engaged in misconduct by: 1) asking leading questions; 2) denigrating defense counsel by telling jurors that the sole purpose of the defense was to lead the jury astray; 3) improperly appealing to the jury's sympathy for the victim; and 4) misstating the jury instructions on accomplice liability and the defense of abandonment.  In addition, Petitioner argues that the cumulative effect of the prosecutor's individual instances of misconduct deprived him of a fair trial.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."  *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999).  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances."  *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982).  The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Mich. Dept. of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit has identified the factors a court should consider in weighing the extent

of prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* at 964 (*quoting Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)).

**1.**

First, Petitioner argues that the prosecutor improperly asked leading questions of prosecution witnesses. The Michigan Court of Appeals, the last state court to issue a reasoned opinion regarding this claim, denied Petitioner's claim, finding, in relevant part:

> This court reviews claims of prosecutorial misconduct on a case-by-case basis, . . . reviewing the pertinent portion of the record to examine the prosecutor's alleged misconduct in context to determine if defendant was denied a fair and impartial trial. People v. Rice, (*On Remand*), 235 Mich. App. 429, 435; 597 N.W.2d 843 (1999). The test is not whether the prosecutor engaged in misconduct, but whether the result was that defendant was denied a fair and impartial trial. Id.

> While it is true that the prosecutor did pose numerous leading questions throughout the trial, defendant has failed to show that any of the evidence suggested by the individual questions could not have been elicited through proper questioning, nor has defendant shown that the questions actually influenced the witnesses' answers. Rather, defendant only offers his speculations that such dangers are inherent in leading questions. Further, the trial court did a commendable job assuring the fundamental fairness of the proceeding by sustaining defendant's valid form objections, admonishing the prosecutor when she continued to pose leading questions, prompting the prosecutor on how to elicit the information she was seeking, instructing the jury on the proper and improper use of leading questions, and instructing the jury that defense counsel's objections to the prosecutor's leading questions were proper.

*Heard, et al.*, 2002 WL 1424420 at *2-3.

Petitioner has failed to show that the Michigan Court of Appeals' resolution of this issue was contrary to or an unreasonable application of Supreme Court precedent. As the appellate

court noted, the trial court judge continually sustained defense counsel's objections and instructed the jury that defense counsel's objections were proper and the prosecutor's questions improper. He also instructed the jury that the "lawyers' questions to witnesses are . . . not evidence. You must consider these questions only as they give meaning to the witnesses' answers." Tr., Vol. 10, at p. 184. Furthermore, a defendant cannot establish that a prosecutor's use of improper leading questions violated his or her right to a fair trial where defense objections to the leading questions were sustained. *United States v. Sarkisian,* 197 F.3d 966, 988 (9th Cir. 1999). Thus, Petitioner has failed to show that the prosecutor's conduct in asking leading questions deprived him of his right to a fair trial.

**2.**

Petitioner next claims that the prosecutor engaged in misconduct by denigrating defense counsel in her rebuttal when she made the following argument:

> The defense has one job, ladies and gentlemen and that job is to lead you astray on any issue it can. Any side issue. To take you away from the physical evidence that I've been talking to you about . . . .

Tr., Vol. 10, at p. 173.

The Michigan Court of Appeals held that, while the prosecutor's comment was improper, it did not deprive Petitioner of a fair trial, stating in pertinent part:

> Defense counsel interrupted the prosecutor with objections to the comments, and immediately thereafter, the court instructed the jury as follows: "Ladies and gentlemen, the job of the defense is to provide a defense. How they do that within the bounds is perfectly acceptable. . . . And has been perfectly acceptable." We conclude that any prejudice created by the prosecutor's ill-advised commentary was mitigated by this immediate and specific curative instruction.

*Heard, et al.*, 2002 WL 1424420 at *4.

14

The Michigan Court of Appeals' finding that the prompt curative instruction ensured that the improper comment did not deprive Petitioner of a fair trial.

**3.**

Next, Petitioner argues that the prosecutor improperly elicited sympathy for the victim. In particular, Petitioner objects to the elicitation of testimony from the victim's grandmother about the victim visiting the neighborhood where he was killed to see his dying mother, the fact that the victim had three young children, and the prosecutor's description of the terror experienced by the victim before he was killed.

The Michigan Court of Appeals did not find the challenged comments improper:

Defendant asserts that the prosecutor improperly appealed to the sympathy of the jury when she made the following comments during her closing argument:

I wish there was some way that I could have put you in a protective bubble and taken you out there that night so you could have heard with your own ears what it sounded like for Lonnie Adams to scream for help. So that you could have heard with your own ears what it sounded like when he said no, no, no as he was being chased.

There was testimony that Adams was yelling or screaming while he as being chased, and that at some point he did yell "no, no, no." The prosecutor need not refer to this evidence during closing arguments in the blandest of terms.

*Heard, et al.*, 2002 WL 1424420 at *4.

The testimony of Adam's grandmother Georgia Tates was relevant because it explained why Adams, who lived in Ypsilanti and had family there, was back in Pontiac the night he was murdered. He was in Pontiac to see his mother. The testimony, which the court admitted, was not unfairly prejudicial.

The prosecutor's comments about the victim's fear and pleas to his attackers presents a

closer question. A prosecutor cannot make remarks to incite the jury's emotions that are irrelevant to the facts. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). To the extent that the prosecutor encouraged the jurors to place themselves in the shoes of the victim and imagine how horrifying the ordeal was for him, her remarks were improper. *See Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005) (closing arguments that encourage juror identification with crime victims are improper). Nonetheless, the prosecutor's improper statements, while deliberate, still arose from the facts of the crime and were not misleading. They were also not prejudicial given the significant evidence of Petitioner's guilt presented at trial and the fact that the trial court instructed the jurors that the attorneys' comments were not evidence and that they should not let sympathy or prejudice influence their decision. *See* discussion *supra*. Petitioner has not shown that the prosecutor's conduct rendered his trial fundamentally unfair.

### 4.

Petitioner next challenges the prosecutor's argument that witnesses Coleman and McNeal were not subject to prosecution for Adams' death because they abandoned the conspiracy. As discussed at length above, while the prosecutor improperly bridged the two sets of jury instructions on accomplice liability and the defense of abandonment, the court admonished the jury that the prosecutor's arguments were not evidence. Moreover, the court's instructions on abandonment were correct, *see* discussion *supra*, and the court instructed the jury to only follow instructions given by the court and not by counsel. In light of the overwhelming evidence of Petitioner's guilt and the court's curative instructions, Petitioner has failed to demonstrate that the challenged statements denied him a fundamentally fair trial.

### 5.

Finally, Petitioner argues that the cumulative effect of the numerous instances of prosecutorial misconduct served to deprive him of his right to a fair trial. The Michigan Court of Appeals held that, considering the prosecutor's conduct in the context of the trial as a whole, the prosecutor's conduct did not undermine the fairness of the proceedings. *Heard, et al.*, 2002 WL 1424420 at *4, *10. The Court of Appeals noted that the trial court responded promptly to instances of improper prosecutorial conduct, thereby ensuring that Petitioner's right to a fair trial was not jeopardized. *Id.* at *4.

While the prosecutor's conduct during trial was far from perfect, "given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and . . . the Constitution does not guarantee such a trial." *United States v. Hasting*, 461 U.S. 499, 508-09 (1983). Considering the prosecutor's conduct in the context of the trial as a whole, the trial court's prompt response to the prosecutor's objectionable conduct, as well as the unequivocal identification of Petitioner as one of the shooters and Petitioner's admissions to McNeal and Coleman, the Court concludes that the cumulative effect of the prosecutor's errors did not deprive Petitioner of a fair trial.

In sum, the Michigan Court of Appeals' conclusion that Petitioner was not deprived of a fair trial by any of the individual instances of alleged misconduct or the cumulative effect of the prosecutor's errors was not contrary to or an unreasonable application of Supreme Court precedent. Petitioner is not entitled to habeas relief on this claim.

### C. Claims III through IX

### 1. Procedural Default

Petitioner raised Claims III through IX – all claims regarding the ineffective assistance of counsel – for the first time in his post-conviction motion for relief from judgment. Respondent argues that these claims are procedurally defaulted because appellate counsel failed to raise them on direct appeal. If a petitioner failed to present federal claims to the state courts in accordance with the state's procedural rules, such claims are procedurally defaulted and federal habeas review is barred. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citations omitted); *see also Burroughs v. Makowski*, 282 F.3d 410, 413 (6th Cir. 2002) (procedural default is based upon "independent and adequate state ground doctrine" that bars federal habeas review when state court declines to address prisoner's federal claims because of failure to meet state procedural requirement) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)).

To determine whether a petitioner has procedurally defaulted a federal claim in state court, a federal habeas court must determine whether:

> 1) the petitioner failed to comply with an applicable state procedural rule; 2) the last state court rendering judgment on the claim at issue, in fact enforced the applicable state procedural rule so as to bar that claim; and 3) the state procedural default is an adequate and independent state ground properly foreclosing federal habeas review of the petitioner's federal claim at issue.

*Hicks*, 377 F.3d at 551 (citations omitted). If under these standards a petitioner is shown to have procedurally defaulted his federal claims in state court, federal habeas review is barred unless the petitioner demonstrates either: "1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or 2) that a lack of federal habeas review of the claim's merits will result in a fundamental miscarriage of justice." *Id.* at 551-52 (citing *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

First, it is undisputed that Petitioner failed to comply with Michigan Court Rule 6.508(D)(3)[2] when he filed his post-conviction motion for relief from judgment because the motion contained Claims III through IX, which he had not raised in his earlier direct appeal.

The second factor in determining whether Petitioner procedurally defaulted these claims is similarly satisfied. Under this factor, the "state judgment" to be analyzed is "the last *explained* state-court judgment." *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). The last state court rendering judgment in Petitioner's state proceedings was the Michigan Supreme Court which denied leave to appeal the trial court's denial of his motion for relief from judgment for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Smith*, 480 Mich. 854 (2007). The Sixth Circuit has repeatedly held that identical, formulaic one-sentence orders denying relief in reliance on Michigan Court Rule 6.508(D) constitute "explained" decisions that enforce a state procedural bar to federal habeas review. *Simpson,* 238 F.3d at 408; *accord Munson v. Kapture,* 384 F.3d 310, 314 (6th Cir. 2004); *Burroughs*, 282 F.3d at 414. *But see Abela v. Martin*, 380 F.3d 915, 922-23 (6th Cir. 2004) (interpreting identical order of the Michigan Supreme Court based upon Michigan Court Rule 6.508(D) as unexplained where lower state court opinion ruled on merits of state prisoner's claims). Moreover, as noted above, in this case, the state trial court expressly relied upon Michigan Court Rule 6.508(D)(3) in denying Petitioner's post-conviction motion for relief from judgment, finding that he had failed to establish cause and prejudice for his failure to raise these

---

[2]Under Michigan law, a court may not grant post-conviction relief to a defendant if, absent a showing of cause and prejudice, the post-conviction motion "alleges grounds for relief . . . which could have been raised on [direct] appeal from the conviction and sentence . . . ." Mich. Ct. R. 6.508(D)(3).

issues on direct appeal.  *People v. Smith,* No. 98-163898 (Oakland County Cir. Ct. Jan. 24, 2006) (unpublished).

The third factor in our analysis concerns whether the state procedural default is an adequate and independent state ground to prevent federal habeas review of the underlying federal issue.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "It is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims."  *Munson*, 384 F.3d at 315 (citing *Simpson*, 238 F.3d at 407-08; *Burroughs*, 282 F.3d at 410)).  It is an adequate and independent state ground for precluding federal review because the rule was firmly established and regularly followed at the time of Petitioner's direct appeal, and was actually followed by the Michigan Supreme Court in this case.  *Hicks*, 377 F.3d at 557 (citation omitted).  The court concludes that Petitioner procedurally defaulted Claims III through IX by failing to raise them on direct appeal.

## 2.  Cause and Prejudice

A petitioner seeking federal habeas review of a procedurally defaulted claim must demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law before a federal habeas court will consider the merits of the claim.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at 750).  The only exception to this rule is when a habeas petitioner can demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice.  *Id.*

Petitioner contends that his appellate counsel was constitutionally ineffective for failing to raise his other claims on direct appeal.  If Petitioner's position is correct, appellate counsel's

ineffectiveness may constitute cause to excuse any procedural default. *Murray*, 477 U.S. at 488.

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

*Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir.2000)). Petitioner has asserted ineffective assistance of appellate counsel as both cause for procedural default, and as an independent ground for habeas relief. For both purposes, Petitioner must demonstrate that appellate counsel's errors rose to the level of a constitutional violation of the right to counsel. *Id.* Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard. "

*Id.* at 754. Moreover, "a brief that raises every colorable issue runs the risk of burying good arguments - those that, in the words of the great advocate John W. Davis, 'go for the jugular,' - in a verbal mound made up of strong and weak contentions." *Id.* at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th

Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003). In challenging the work of appellate counsel, a petitioner must show that the claims appellate counsel failed to raise would have succeeded on appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Strickland*, 466 U.S. at 694).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims in his post-conviction motion from his direct appeal. Appellate counsel filed a forty-seven page brief on appeal which raised the first two claims raised by Petitioner in his habeas application. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Oakland County Circuit Court in its opinion and order denying post-conviction relief, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners."

> As a threshold matter, Defendant argues that the Court did not acquire jurisdiction. However, the Court had personal jurisdiction of Defendant and subject matter jurisdiction over first-degree murder cases. . . . The Court finds there is no jurisdictional defect.

22

Turning next to the prejudice component, Defendant must demonstrate that, but for the alleged errors, Defendant would have had a reasonably likely chance of acquittal. MCR 6.508(D)(3)(b)(I). At trial, Dion Coleman testified that the victim and co-defendant Antwan Williams got into an argument while at a dice game on the night of the shooting. Afterward, Defendant, Williams, Kevin Harris, and Lamont Heard discussed killing the victim. Later that night, a 12-year-old witness saw Defendant and the other co-defendants chase and shoot the victim. Coleman testified that Defendant later admitted his involvement in the murder. Antoine McNeal also testified that Defendant admitted his involvement in the murder. Given this overwhelming evidence, Defendant has failed to demonstrate that his alleged errors would have changed the outcome of the trial. . . .

Defendant has failed to demonstrate actual prejudice . . . .

*Smith*, No. 98-163898, at p. 2.

Because the defaulted claims are not "dead bang winners," Petitioner has failed to establish deficient performance under *Strickland* and there cannot demonstrate cause for his procedural default of failing to raise Claims III through IX on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000); *Meade,* 265 F. Supp. 2d at 872. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue. *Smith*, 477 U.S. at 533; *Rowls v. Jamrog,* 193 F. Supp. 2d 1016, 1026 (E.D. Mich. 2002). To the extent Petitioner is raising a stand-alone claim of ineffectiveness of appellate counsel it necessarily also fails.

Additionally, Petitioner has not presented any new reliable evidence to support an assertion of innocence which would allow this Court to consider his claims in spite of the procedural default. Petitioner's argument that the verdict is against the great weight of the evidence (Claim VII) is insufficient to invoke the actual innocence exception to the procedural default rule. *See Malcolm v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because

Petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declines to review Petitioner's defaulted claims on the merits. *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 654 (E.D. Mich. 2002).

Finally, assuming that Petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Oakland County Circuit Court in rejecting Petitioner's third through ninth claims on post-conviction review, Petitioner has failed to show that his claims have any merit. The trial court's determination that the errors alleged in the post-conviction motion would not have altered the outcome of the proceedings is entitled to deference. *Poindexter v. Mitchell*, 454 F.3d 564, 572 (6th Cir. 2006). "The prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of petitioner's guilt and lack of evidence to support his claim." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (quoting *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994)). Petitioner's claims are thus barred by procedural default and do not warrant relief.

### VI. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner,

or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. When a district court rejects a habeas petitioner's constitutional claims on procedural grounds, a certificate of appealability should issue if "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having conducted such a review, the Court concludes that no reasonable jurist would find it debatable whether the Court was 1) correct in dismissing Claims I, II and the claim of ineffective assistance of appellate counsel on the merits and 2) correct in dismissing Claims III through IX on procedural grounds. Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. A certificate of appealability is not warranted in this case nor should Petitioner be granted leave to proceed on appeal in forma pauperis as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## VII. ORDER

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Expand the Record is **GRANTED** and Motion for Discovery is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED** and

Petitioner is **DENIED** leave to proceed in forma pauperis on appeal.


DATED: April 26, 2010                          **s/ Anna Diggs Taylor**
                                               ANNA DIGGS TAYLOR
                                               UNITED STATES DISTRICT JUDGE

---

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on April 26, 2010.

Bobby Smith, #270490
Chippewa Correctional Facility
4269 West M-80
Kincheloe, MI 49784                            s/Johnetta M. Curry-Williams
                                               Case Manager